## COMMONWEALTH v. PENNSYLVANIA CO.

APPEALS BY COMMONWEALTH AND DEFENDANT FROM THE
COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued June 3, 1891—Decided January 25, 1892.
[To be reported.]

1. When the auditor general and state treasurer have settled an account
for state taxes against a taxpayer, and the taxes thus assessed have
been paid, the account, except as to clerical mistakes, is closed after
the lapse of a year from the time of such payment, and can then be re-
opened only by an order of the board of revision created by the act of
April 8, 1869, P. L. 19.
(a) In 1872 and 1873, the auditor general and state treasurer, construing
the charter of a corporation in a certain way, assessed against it a small
amount of capital-stock tax, which was paid. From 1874 to 1887, in-
clusive, the taxing officers, in their annual settlements with the com-
pany, acting under an official opinion of the attorney general construing
the charter in another way, refrained from assessing any such tax:
2. It was not within the power of the auditor general and state treasurer
to state an account against the company in 1888, by which, disregard-
ing the action of their predecessors, and adopting a third construction
of the company's charter, they charged it with taxes on capital stock
for 1874 to 1887, and additional sums on account of such taxes for 1872,
1873; Haehnlen v. Commonwealth, 13 Pa. 617, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 46, 47 May Term 1891, Sup. Ct.; court below, No. 90
June Term 1889, C. P.

On March 27, 1889, the Pennsylvania Company entered in
the court below an appeal from an account for taxes on capital
stock, settled by the auditor general and state treasurer. The
account charged the company with taxes for the years 1872,
1873, and part of 1874, under act of May 1, 1868, P. L. 108;
for 1875, 1876, and parts of 1874 and 1877, under act of
April 24, 1874, P. L. 68; for the latter part of 1877, and for
1878, under act of March 20, 1877, P. L. 6; for 1879, under
said act of 1877 and act of June 7, 1879, P. L. 112; and for
1880 to 1887, under the act last mentioned. That part of the

Statement of Facts.

settlement relating to 1872 and 1873, and an indication of the remainder of it, are herewith given :

1872. Dividend 6 per cent on capital
         stock of  .   .   .   $10,500,000 00
         Tax at three mills,   .   .   . 31,500 00
         By payment under former
         settlement, .   .   .   .   1,158 96

         Balance due commonwealth, .   .   .   $30,341 04
         Interest at 12 per cent from 1-15-73 to 5-1-88,  55,675 80  $86,016 84
1873. Dividend 6 per cent on capital
         stock of   .   .   .   $10,500,000 00
         Tax at three mills, .   .   .   31,500 00
         By payment under former
         settlement,   .   .   .   2,856 90

         Balance due commonwealth, .   .   .   $28,643 10
         Interest at 12 per cent from 1-15-74 to 5-1-88,  49,122 91   77,766 01
1874. Tax, with interest at twelve per cent   .   .   .   125,627 45
1875. Tax, with interest at twelve per cent   .   .   .   . 118,057 50
    \*     \*     \*     \*     \*     \*     \*     \*
1887. Tax, with interest at twelve per cent .   .   .   .   30,750.00

                          $1,184,556.50

Appended to the account as stated, were the following memoranda :

              "AUDITOR GENERAL'S DEPARTMENT,
                 "HARRISBURG, May 1, 1888.

" Settled and entered :

                 "JOHN A. GLENN,
                "for A. WILSON NORRIS,
                   "Auditor General.

" PENNSYLVANIA COMPANY.
             "TREASURY DEPARTMENT,
        "COMMONWEALTH OF PENNSYLVANIA,
            "HARRISBURG, 7th Jan'y, 1889.

" This account was received at the treasury department of Pennsylvania December 27, 1888. It re-settles the accounts for 1872 and 1873 which were paid by the company. No evidence has been submitted to this department showing these accounts to be incorrect. With doubts as to the authority to revise the action of former state officers on accounts so long

Statement of Facts.

closed, and in absence of additional evidence, this account is
approved.                                    W. B. HART,
                                        "State Treasurer."

With its appeal, the company filed a specification of objections to the account, among others being the following :

9. On the sixteenth of December, 1873, the auditor general
settled and entered, and on the nineteenth of December, 1873,
the state treasurer approved a settlement for taxes upon the
capital stock of the company for the year 1872.   The amount of
this settlement was paid to the state.   On the eleventh of February, 1874, the auditor general settled and entered, and on
the thirteenth of February, 1874, the state treasurer approved
a settlement for tax upon capital stock of the company for the
year 1873.   The amount of this settlement was also paid to
the state.   No appeal was taken from either of these settlements, nor were they or either of them taken by any proceedings out of the office or offices of the said officers.   They
therefore became binding and conclusive upon the commonwealth, and the attempt made by this settlement to disturb, to
re-open and revise said settlements, more than twelve months
after the dates at which they were made, is in violation of § 16
of the act of April 30, 1811, 5 Sm. L. 231, and is illegal.

11. The said settlement is an attempt to construe the tax
relations of the company to the state ; to determine its tax
liability ; to make valuations and appraisements of the capital
stock of the company, and to re-open and revise previous tax
settlements made against it.   These are judicial acts which
cannot be delegated for performance to the corporation clerk
of the auditor general, and the settlement being made by the
corporation clerk and not by the auditor general, is without
authority and void.

12. The account shows that it was not approved by the
state treasurer in the manner required by law, and upon such
information, and in such manner, as would alone make his action legal, and said settlement is therefore void.

—The remaining specifications related to the questions
whether the company was exempt from such taxation by reason
of the provisions of § 4, act of April 7, 1870, P. L. 1025, by
which it was incorporated, and, if not so exempt, upon what
basis its liability should be computed.

Decision of Court below.

The case having been tried without a jury, on a submission under the act of April 22, 1874, P. L. 109, the court, SIMON-TON, P. J., on May 8, 1891, filed a decision, which, as subsequently amended, was in part as follows :

### FINDINGS OF FACT.

1. The corporation defendant owes its existence to a special charter granted by the legislature of the state of Pennsylvania, approved April 7, 1870, conferring upon it the right to manage, operate, and control railroads within or without the state of Pennsylvania, and to exercise all the powers and privileges and to perform the duties in said charter enumerated and specified, and enacting specifically that, " the several railroads managed by said company shall continue taxable, as heretofore, in proportion to their length within this state respectively; and the said Pennsylvania Company shall be taxable only on the proportion of dividends on its capital stock and upon net earnings or income, only in proportion to the amount actually carried [earned?] by it within the state of Pennsylvania, and all its earnings or income derived from its business beyond the limits of this commonwealth shall not be liable for taxation." This charter is contained in P. L. 1870, 1025–1028, and is hereby referred to and made part of this finding of fact.

2. Defendant began business in the year 1872, and for that year and the year 1873 its treasurer made reports to the auditor general of its capital stock and dividends declared, as required by law, at the same time claiming that the tax on its capital stock should be apportioned according to the proportion of the number of miles of railroad operated by it within and without the state of Pennsylvania. This claim was recognized by the auditor general and state treasurer, in the settlements made against it for tax on capital stock for the years stated, and only such proportion of its capital stock was taxed in said settlements, and this tax was paid by defendant.

Defendant's treasurer made reports of its capital stock for all the other years included in the settlement appealed from, subsequent to the year 1873, but defendant claimed that under the clause in its charter, above quoted, it was not liable to tax on capital stock; and this was acceded to by the accounting department, and no settlements for such tax were ever made against it, until the settlement now in controversy was made

by the auditor general, May 1, 1888, and approved by the state treasurer, January 7, 1889, in the language following : [See, ante, 267.]

In the settlement, the whole capital stock of defendant is taxed for all the years included therein, credit being given for the amount of tax paid for the years 1872 and 1873, as appears by said settlement hereby made part of this finding.   Defendant appealed therefrom, and filed its specifications of objections, hereby referred to and made part of this finding.

3. During all the years included in the settlement, defendant was, under the authority granted in its special charter, exclusively engaged in the business of operating and managing, by means of leases and ownership of their stock and bonds, a number of railroads, some wholly within and others wholly without, and most of them partly within and partly without the state of Pennsylvania, and of extending and improving said railroads, and was not, during said period of time, exercising any other franchise.   It also owned real estate and tangible personal property, including railroad equipment, within and without the state of Pennsylvania, but all the property of defendant was acquired for and exclusively used in the transaction of its business as aforesaid, and for no other use or purpose.

—The court then stated in detail the facts respecting the various investments by which the capital stock of the company was represented, and made further findings as follows :

8. The principal office of defendant is, and has been, during all the years included in the settlement appealed from, in Pittsburgh, in the state of Pennsylvania; and the certificates of stock, and the bonds owned by said company, as shown by the statements which were offered in evidence, and are hereinbefore referred to, are kept by it at its office within this state, and have been so kept during all the years covered by this settlement.

9. Defendant offered in evidence a letter, dated Harrisburg, July 13, 1876, addressed to the auditor general, by the then attorney general, giving as his opinion that the taxing act of 1874, under which, in part, the settlement appealed from was made, did not repeal or affect the clause of defendant's charter with respect to the mode and extent of its liability to taxation,

Decision of Court below.

and that defendant was exempt from taxation until it earned profits. This letter, marked exhibit B–22, is hereby made part of this finding. . . . .

—The letter referred to was from Hon. George Lear, Attorney General, to Hon. J. F. Temple, Auditor General, dated July 13, 1876, and was as follows :

" DEAR SIR : In the matter of the Erie & Western Transportation Company and the International Navigation Company, referred to me, it appears to be clear that they are exempt from taxation unless they can earn and declare dividends, and then only in proportion of dividends on their capital stock, and upon net earnings or income only in proportion to the amount carried by them within the state of Pennsylvania. These companies are making no dividends, and if they did, it is alleged they carry no freight within the limits of the state.

" The act of 1874 does not repeal the special privileges and exemptions in reference to the Pennsylvania Company, under which the two companies in question were chartered. I have given this question a careful consideration; and, while I am clear that until they earn profits they are exempt from taxation, and it is doubtful in what proportion they will be liable to pay when their business becomes remunerative, their carrying business seems to be almost entirely out of the state. But, when the time arrives for the consideration of the question, we must endeavor to ascertain what amount of their business is done within this commonwealth.

" Very respectfully, your obedient servant."

DISCUSSION.

The learned counsel for defendant contend that defendant is exempted from tax on its capital stock by the clause in its charter which enacts that " the several railroads managed by said company shall continue taxable, as heretofore, in proportion to their length within this state respectively; and said Pennsylvania Company shall be taxable only on the proportion of dividends on its capital stock and upon net earnings or income, only in proportion to the amount actually carried (earned?) by it within the state of Pennsylvania, and all its earnings or income derived from its business beyond the limits of this commonwealth, shall not be liable for taxation :" § 4, act of April 7, 1870, P. L. 1027; and they therefore claim that

Decision of Court below.

as the settlement is for tax on capital stock, it is in violation of the charter, and illegal and void.

—After stating as conclusions, that the clause of the defendant's charter above quoted did not exempt it from tax on its capital stock: Erie Ry. Co. v. Pennsylvania, 21 Wall. 492 ; Vicksburg etc. R. Co. v. Dennis, 116 U. S. 665 ; that, if such exemption were granted thereby, it was repealable at any time by the legislature : Wagner Institute v. Philadelphia, 132 Pa. 612 ; and was repealed by the acts of April 24, 1874, P. L. 68 ; March 20, 1877, P. L. 6 ; and June 7, 1879, P. L. 112, under which the greater part of the taxes claimed in this case were assessed : Union Imp. Co. v. Commonwealth, 69 Pa. 140 ; Bourguignon Building Ass'n v. Commonwealth, 98 Pa. 54 ; Susquehanna Boom Co. v. Commonwealth, 14 W. N. 65, the opinion continued :

We have found as a fact that settlements were made by the auditor general and state treasurer against defendant, for tax on capital stock for the tax years 1872 and 1873, in those years respectively, and that the taxes therein charged against it were paid. The defendant claims, on these facts, that a re-settlement against it, by the same officers, for the same years, is illegal and void.

The able counsel, associated with the learned attorney general, contends that the settlement is valid, and cites, to sustain this position, Commonwealth v. Easton Bank, 10 Pa. 442, and Commonwealth v. Canal Co., 1 Pears. 359, and 50 Pa. 399. But there was no re-settlement·in either of these cases. In both, the accounting officers had simply omitted to make any settlement, or to claim any tax. But we cannot doubt that in this case the account is a re-settlement. The argument that it is not a re-settlement for the same tax, because, by the credit given for the amount formerly paid, the stock taxed in the original settlements is not taxed in this, does not convince us ; and we think there is no authority for holding that § 16 of the act of March 30, 1811, 5 Sm. L. 231, warrants this settlement; and as this is the only ground on which we are asked to sustain it, we must hold that, so far as it applies to the tax years of 1872 and 1873, it is erroneous, and that no tax can be recovered for those years.

The result we have reached at this point is, that the settle-

ment for the years 1874 to 1887, inclusive, is valid, and that defendant is taxable for these years on so much of its capital stock as was within the taxing power of the state during the several years, respectively, and was intended to be taxed by the acts of 1868, 1874, 1877, and 1879.

The questions remaining to be disposed of are questions of proportion only. . . . .

Where the subject of the tax is the capital stock of a railroad company, which is substantially all invested in its roadbed, stations and terminals, and equipment or rolling stock, an apportionment according to the mileage basis will do substantial justice.   But where, as in this case, most of defendant's capital stock is invested in tangible personal property and securities, and the amounts of each within and without the state are given, we can see no reason why the tax as to these should not be assessed directly upon the amounts actually within the state. But, as it cannot be said that any particular amount of the investments in equipment or rolling stock, or in the leases, is within or without the state, we think substantial justice is done by adopting as to them the mileage basis of apportionment.

Some minor objections to the legality of the settlement were made on the trial, but, while we have not overlooked them, we do not consider it necessary to discuss them.   If sustaining any of them would change the result we have reached, they must be considered overruled.

The case was heard and has been considered by both the judges of this court, and we concur in the following

CONCLUSIONS OF LAW:

1. Defendant is not exempted from taxation on its capital stock by the clause in its charter relative to taxation; and if such exemption ever existed it was repealed by the taxing acts of 1874, 1877, and 1879, under which the taxes are claimed in this case.

2. Defendant is not liable for any of the tax charged in the settlement appealed from for the years 1872 and 1873, and as to these years the settlement is erroneous and illegal.[1]

3. Defendant is not taxable on the amount of its capital stock represented by investments in real estate outside, and in supplies and other personal property outside of Pennsylvania;

and as to the tax claimed on these amounts the settlement is erroneous.

4. Defendant is taxable on the amount of its capital stock represented by investments in real estate in Pennsylvania, personal property in Pennsylvania, stocks of foreign corporations, bonds of foreign corporations, and bonds of domestic corporations; and as to the tax claimed on these amounts, the settlement is legal and valid.

5. Defendant is taxable on so much of the amount of its capital stock represented by investments in shares of stock of Pennsylvania corporations, as represents capital stock which has not paid a tax on capital to the state; but it is not taxable on so much of its investments in shares of stock as represents capital stock on which a tax for the several years respectively was paid to the state ; and, so far as tax is claimed in the settlement for any greater amount, it is erroneous.

6. Defendant is taxable on the proportion of its capital stock represented by investments in equipment or rolling stock which is found to be within the state, by apportioning the whole amount invested in equipment on the basis of its mileage within and without the state, as shown by the findings of fact and exhibits; but it is not taxable on any other or greater proportion of the amount of its capital invested in equipment or rolling stock; and, so far as the settlement charges defendant with any other or greater amount, it is erroneous.

7. Defendant is taxable on the proportion of its capital stock represented by investments in the several leases respectively, mentioned in the findings of fact and in exhibit B–11, found to be within the state, by apportioning the value of each lease separately according to the number of miles in length of each road leased, within and without the state, and to this extent the settlement is valid ; but, so far as defendant is taxed therein for any other or greater amount of capital stock than is represented by the proportion thus found to be in Pennsylvania, the settlement is erroneous.

8. Defendant is not liable for any interest or penalty on any of the amounts charged against it in said settlement, or found due in this opinion, for or from any date prior to March 7, 1889.

9. Judgment is directed to be entered against defendant in favor of the commonwealth, for the amount which shall be

Arguments.

found due by calculation made on the basis of these conclu-
sions, and approved, and ordered to be filed by the court, if
exceptions be not filed within the time limited by law.[a]

—By a supplemental order the court ascertained the amount
due from the defendant to the commonwealth, "calculated upon
the principles stated in the conclusions of law:"

| | |
|---|---:|
| Amount of tax for the years 1874 to 1887, inclusive, . . . . . . | $317,858 05 |
| Interest from March 7, 1889, to May 8, 1891, | 82,749 05 |
| Attorney general's commission, . . . | 15,892 90 |
| Total, . . . . . . | $416,500 00 |

and judgment was directed to be entered in favor of the com-
monwealth for said amount, nisi.

Exceptions filed by the commonwealth and the defendant,
respectively, having been overruled, and judgment entered,
the commonwealth took the appeal to No. 46, specifying inter
alia that the court erred in overruling exceptions filed by the
commonwealth:

1. To the second conclusion of law.[1]

9. That the court did not enter judgment for the common-
wealth and against the defendant for

| | |
|---|---:|
| Tax, . . . . . . . | $474,626 62 |
| Interest, . . . . . . . | 123,561 13 |
| Attorney general's commission, . . | 23,731 33 |
| | $621,919 08 |

The defendant took the appeal to No. 47, specifying inter
alia that the court erred:

10. In overruling an exception to the order for judgment.[a]

13. In not directing judgment to be entered for defendant.[*]

*Mr. W. U. Hensel*, Attorney General, and *Mr. Rufus E. Shap-
ley* (with them *Mr. Jas. A. Stranahan*, Deputy Attorney Gen-
eral, and *Mr. Ellis Ames Ballard*), for the Commonwealth:

The action of the court in throwing out that part of the

---

[*] Numerous other assignments of error were filed by each party, relat-
ing to the rulings of the court respecting the defendant's liability to taxa-
tion and the extent and basis thereof, and the questions raised thereby
were very elaborately argued in the briefs filed.

Opinion of the Court.

settlement relating to the years 1872 and 1873, is directly contrary to the doctrine heretofore laid down by this court: Easton Bank v. Commonwealth, 10 Pa. 445; Commonwealth v. Canal Co., 1 Pears. 359; Delaware Canal Co. v. Commonwealth, 50 Pa. 399. The company suggests that the approval of the state treasurer is not in proper form. A careful reading of it will show that the doubts and qualifications expressed by him relate solely to the years 1872 and 1873, and in no event can they affect the approval as to other years.

*Mr. Wayne MacVeagh* and *Mr. Lyman D. Gilbert* (with them *Mr. John H. Weiss* and *Mr. J. T. Brooks*), for the defendant:

The opinion of the law department of the commonwealth as to the taxability of the defendant's capital stock, elicited by the accounting department and for thirteen years accepted and acted upon without question, " should not be overthrown without cogent reasons:" United States v. Moore, 95 U. S. 763; Edwards v. Darby, 12 Wheat. 210; United States v. Gilmore, 8 Wall. 330; Insurance Co. v. Hoge, 21 How. 66; Matthews v. Showers, 24 Ill. 27; Graham's App., 1 Dall. *136; Steiner v. Coxe, 4 Pa. 13; Gottard v. Gloninger, 5 W. 209; United States v. The Recorder, 1 Blatch. 218; Packard v. Richardson, 17 Mass. 143; Sedgwick on Statutes, 216. The auditor general and state treasurer have no power to open up the settlement made in 1872 and 1873, years after the tax has been paid in accordance therewith: § 16, act of March 30, 1811, 5 Sm. L. 231; § 1, act of April 8, 1869, P. L. 19. In the cases cited by the commonwealth, there had been no prior settlement for any of the years covered by the settlements appealed from.

OPINION, MR. JUSTICE WILLIAMS:

These appeals may be disposed of together.

The Pennsylvania Company obtained its charter in 1870, completed its organization in 1872, and entered at once upon active business as a lessee of lines of transportation built and owned by existing corporations. It made returns of its situation and business to the auditor general yearly, as required by the tax laws of the commonwealth, and that officer assessed upon

it the taxes which he believed to be legally chargeable against
it. These taxes have been regularly paid. In 1874 the com-
pany alleged that, by the terms of its charter, it was not liable
to a tax upon its capital stock, and that none ought to be as-
sessed against it. The auditor general regarded the question
thus raised as one of law, and referred it, as it was eminently pro-
per that he should do, to the Hon. George Lear, then attorney
general, for decision. After examining the question, the attor-
ney general came to the conclusion that the company was right*
in its interpretation of the charter, and advised, by a written
opinion furnished to the auditor general, that the company was
not liable to a capital-stock tax. This opinion was adopted un-
hesitatingly, as furnishing the correct construction of the char-
ter and the measure of the liability of the company; and, in
conformity with it, the auditor general omitted from the taxes
charged against the company that upon its capital stock. His
successors adopted the same construction of the charter, and, in
like manner, refrained from assessing the company with this
particular tax, down to the year 1888. On May 1, 1888, a clerk
in the office of the auditor general, in his own name, and, so far
as appears, of his own motion, undertook to overrule the de-
cision of Attorney General Lear upon the legal question, and
to brush aside the precedents established by a succession of able
men who had filled the office of auditor general under administra-
tions differing in political character. He accordingly stated an
account, in the usual manner in which current accounts are
stated, charging the company with a capital-stock tax, running
back to the date of its organization in 1872, covering almost a
score of years, and reaching the very respectable total of about
one and a quarter millions of dollars. This remarkable docu-
ment occupied about eight months in making the journey to
the office of the state treasurer, which it reached in January,
1889. Some days after its arrival in his office, the state treas-
urer indorsed, what is perhaps intended as a formal approval
upon it, adding, however, words to show that he was not satis-
fied " as to the authority to revise the actions of former state
officers on accounts so long closed." Taken together, this in-
dorsement can hardly be called an approval. It is very clear
that the state treasurer did not regard the document as a state-
ment of accruing taxes, but as a re-settlement of accounts stat-

ed by former state officers, and long since closed. He says so distinctly. If he was right in this view of the document before him, neither his approval, nor the account on which it was indorsed, is of the slightest value.

This leads us to inquire how public accounts are settled, how they are re-settled, and what the powers of the auditor general in the premises really are. The act of 1811 * gives the auditor general the power to state and settle accounts between the state and its debtors, " according to law and equity." When he has so stated an account, it is next to be submitted to the state treasurer, for his examination and approval. If it is approved by him, it is returned, properly indorsed, to the auditor general, in whose hands it is then ready for collection. When presented to the taxpayer, or debtor, he may, if not satisfied with the account, appeal to the courts. If he does not appeal, he must pay the account as stated. Where the several taxes for a given tax year are thus assessed and paid, the year's accounts between the state and that particular taxpayer are closed. They may be opened and the account re-stated at any time within twelve months after voluntary payment, on the request of the taxpayer, of the auditor general, or the state treasurer. If the auditor general discovers that he has made a clerical error, or if an error appears upon his books, or by information, against the commonwealth, the act of 1846 † gives power to the auditor general and state treasurer to correct such mistakes. If no request be made within a year after payment, and no clerical error or mistake is discovered, capable of correction under the act of 1846, the account must be regarded as closed. If such an account is to be opened and re-stated, it must be done under the provisions of the act of 1869.‡ This statute creates a board of revision, composed of the attorney general, auditor general and the state treasurer, and clothes them with a sort of judicial power over accounts that have been closed more than one year after voluntary payment. They must sit as a board to hear, after notice to all parties interested, and to determine the validity of the reasons assigned for the opening of the account. If they decline to open the account, the proceeding ends.

---

* Act of March 30, 1811, 5 Sm. L. 228.

† § 8, act of April 21, 1846, P. L. 415.

‡ Act of April 8, 1869, P. L. 19.

If they open it, they must proceed to revise and adjust the account "according to law and equity," and certify the balance due.  Here we have a system easy to understand and to apply.  Current accounts are stated yearly by the auditor general, against those liable to state taxes.  These accounts, when approved by the state treasurer, are binding on the taxpayer unless he appeals to the courts.  Still they are open to correction, on request, within one year after payment.  If they have been made to show too small a sum due to the state, by a mistake of the officer who stated them, this mistake may be corrected under the act of 1846.  If more than a year has elapsed after payment, and the account cannot be corrected for clerical error, a revision becomes necessary, and an application must be duly made to the board, which has exclusive jurisdiction in such cases, and which must keep some record of its business and its decisions.

Our remaining question is over the effect of the paper before us.  Is it a statement of accruing taxes which the auditor general may make, or is it a re-statement of closed accounts?  The learned judge of the court below held it to be a re-statement as to the years 1872 and 1873, and therefore of no force and effect as to those years ; but, as to the years following 1873, he held it to be an original settlement of accruing taxes, which any clerk in the auditor general's office was competent to make.  He was clearly right as to the years 1872 and 1873, and wrong as to the years succeeding.  The only apparent reason for the distinction taken in the court below is, that in 1872 and 1873, a small amount of capital-stock tax was assessed upon the company, on a construction of its charter now thought to be erroneous ; while in the following years, upon another construction also alleged to be erroneous, the auditor general assessed no capital-stock tax whatever against it.  The present contention is, that both these constructions must be abandoned and a new and radically different one adopted.  Having thus reversed the legal conclusions of four or five of his predecessors, reached under the advice of an attorney general, the auditor general proposes to revise their work, and do for them, what, upon full consideration, they refused to do.  If this is not a revision of their work, we should be glad to know what would be.  They met this question year after year, "is this company liable to a capital-stock tax ? "

They decided it. They assessed the taxes due from the company, upon the basis which that decision afforded. Whether the decision was that the company was liable upon a mileage basis, or that it was not liable upon any basis, it was equally a a decision of the question by the proper officer, and under it the taxes due for the year were computed, the company was called upon to pay them, and they were actually paid in full.

But it is said, these taxes were omitted by mistake. When one fails by some forgetfulness, or inadvertence, to do what he intended to do, or knew should be done, such failure may be said to happen by mistake. But, if one does just what he intended to do, in the way he intended, after careful deliberation and competent legal advice, his action is in no sense due to mistake. His conclusion may be wrong, but it has been considerately reached. His action may do some one an injustice, but, if so, it is not the result of accident, but of a conviction that the action is the proper one to take. Before such action can be reversed, or set aside, it is necessary to revise the conclusions on which it rested. An error in computation, or in transcribing, may be corrected, and such correction merely gives effect to the purpose of him by whom the error was made. He failed to do what he intended, when he made the error, and its correction is in aid of his own execution of his intent. But Auditor General Temple did not intend to assess a capital-stock tax against the defendant company. He investigated the question, and decided that the company was not liable, and proceeded to state the taxes due from it just as he believed they should be stated. His decision cannot be reversed by his successor, in the manner now attempted. His successor is not bound by it. He may adopt a different rule, for his own guidance in the current business of his office, but he cannot go back and do over again the finished work of his predecessors. If he could do what is proposed here, he could go back to the foundation of the commonwealth. If he could thus overhaul accounts, his successor could do the same thing, and so on indefinitely. The time would never come when a corporation, or other taxpayer, could feel safe, or be beyond the reach of an officer or clerk disposed to make him trouble, or to speculate on his fears or his dread of litigation.

The further suggestion is made, that this is a case in which

the real question is, whether the commonwealth shall suffer for the laches of her agents. The case of Haehnlen v. Commonwealth, 13 Pa. 617, is cited in support of the proposition that she is not so bound; and, for this reason, we are asked to sustain the assessment of taxes before us. But we do not see that such a question is involved in this case. Auditor General Temple was not neglectful of his duty in 1874. He did not forget the subject of the defendant company's liability for taxes, or fail to investigate the extent of that liability. When he found that it was thought to depend on the proper construction of the charter, he went to the attorney general for advice. When the official opinion of that officer was received, he followed it. The question before him was one of law, not one of fact. If a wrong was done the commonwealth by the decision arrived at, it was due to an error in law made by the attorney general, not to a mistake in computation made by the auditor general or his clerks. To such a case the rule in Haehnlen v. Commonwealth, is not applicable.

Now, let us assume, for the moment, that Attorney General Lear was mistaken in his view of the effect of defendant's charter. Let us further assume, what we have no reason to doubt, that the auditor general under whom this settlement of taxes was made, had reached a different conclusion from his predecessors, and believed it to be his duty to assess the company with a capital-stock tax. What should he do in that case? Clearly, he should, in the assessment of accruing taxes, act upon his own convictions, and add a capital-stock tax. The company could then appeal regularly, and have the proper construction of their charter declared by the courts. With such a course no fair-minded person could find fault. It would bring the question to a decision in a proper manner, without unnecessary hardship, and without putting the commonwealth in an ungracious and inequitable position towards a large taxpayer. What was done in this case, wears a very different aspect, and raises other serious questions besides that of the construction of defendant's charter. In a recent case, in which the city of Philadelphia was plaintiff, and the Ridge Avenue Pass. Ry. defendant, 142 Pa. 484, an effort was made to re-state the account of the taxes due from the railway company to the city for a series of years. Taxes had been assessed and paid during

all these years on one basis. It was alleged that, stated upon a different basis, a larger sum would have been due yearly, and the effort was to go back and re-state the taxes for each year. We said, in an opinion delivered by our late Brother Clark, that this could not be done. The city had stated her demands and enforced the payment of them year by year. The year's business of the company had been settled and its net earnings divided upon that basis, regularly, among its stockholders, or invested in improvements. To disturb the situation, after the lapse of years, we said was inequitable; and, as the city was not above the obligation to be just to its tax-payers, it was not allowed to recover the additional sums de-manded.

The auditor general is authorized, and it is his plain duty, to settle and state accounts between the commonwealth and its debtors and taxpayers, " according to law and equity." The commonwealth does not need, and, whether it needs or not, it does not ask that which is against good conscience. It is true, that a corporation may not die, but corporators do. In sixteen years the membership may change largely, perhaps wholly. The money that should have gone to pay the taxes claimed for 1872, or any subsequent year, if they should have been assessed on the basis now claimed, has been long since paid in dividends, or invested in improvements. Those who received the divi-dends may be no longer members of the company. The es-tates of some who have died, may be already settled, and divided among heirs at law. The stock, enhanced in value by investments of undivided profits may be held by those who have paid a full price for it. If these sums are now to be col-lected, the burden may fall on those who have not profited by the failure of the state to demand them when they were pro-perly demandable; while those who did profit by it are now beyond reach. A private suitor would be estopped by these facts. Equity would not permit him to recover under such circumstances. Why should the commonwealth of Pennsyl-vania seek to do that which no court would permit a citizen to do? The settlement of such questions is, fortunately, not left to the judgment of a single officer. They must go to the board of revision. If this extraordinary demand ever reaches that body, its members will consider all the circumstances, and

determine whether "law and equity" require them to unsettle the work of a score of years, regardless of the consequences to private interests, for the sake of determining a question of law that may be settled at any time, in an orderly manner, by the act of the auditor general in stating accruing taxes.

We purposely express no opinion upon the construction of defendant's charter. We will consider that question when it comes to us. What we now hold is, that after the lapse of a year, from the time of payment of the taxes of a current year, without any request for the re-statement of the account of the taxpayer, the account is closed, except as to clerical mistakes, and can only be re-opened by an order of the board of revision.

> The judgment of the court below is now reversed, and judgment is now entered in this case, in favor of the defendant.

The appeal of the commonwealth from the same judgment, is disposed of by the foregoing opinion. In that case

> The judgment is affirmed.