## Steel's Estate.

*Transfer inheritance tax—Appraisement—Failure to appeal—Refund of tax based on erroneous appraisement—Act of June 20, 1919.*

All questions of fact and law as to the valuation and liability of an estate appraised for the transfer inheritance tax, imposed by the Act of June 20, 1919, P. L. 521, are conclusively determined by the appraisement upon the failure to take an appeal as provided in the act, and the State Treasurer is without authority, where no appeal has been taken, to make a repayment of tax when the application for such repayment is based upon alleged error in the valuation or in deciding that the fund is liable to tax, "except in cases of overvaluation in the classes of estates expressly specified in the 40th section."

Department of Justice. Opinion to Hon. Charles A. Snyder, State Treasurer.

JOHN ROBERT JONES, Dep. Att'y-Gen., July 28, 1924.—With a letter from your department, dated July 2, 1924, there were enclosed petition, proofs and correspondence in the matter of the application of the executors of the estate of John B. Steel, deceased, for a refund of the transfer tax imposed under and by the provisions of the Act of June 20, 1919, P. L. 521, alleged to have been paid in error. A request was made in said letter, in view of the legal questions involved, for an opinion from this department as to whether or not a refund should be allowed in this case, and, if so, what the amount of such refund should be.

*Facts.*

John B. Steel, a resident of the Borough of Greensburg, County of Westmoreland and State of Pennsylvania, died Oct. 3, 1920. Dec. 1, 1920, Edward A. Cremer, Register of Wills of Westmoreland County, appointed Joseph D. Wentling, of Greensburg, Pennsylvania, an appraiser "to make a fair and conscionable appraisement of such estate, and to assess and fix the cash value of all annuities and life estates growing out of said estate," in accordance with the provisions of the Act of June 20, 1919, P. L. 521. Jan. 3, 1921, such an appraisement was made and filed. A tax was imposed in the sum of $23,295.73 upon a clear value of the estate, subject to such tax in the amount of $1,164,786.57. Payment of the said tax having been made within three months after the death of the decedent, a discount of 5 per centum of such tax was allowed in the sum of $1164.79. Jan. 3, 1921, the date upon which the appraisement was made and filed, the executors of the last will and testament of the said John B. Steel paid the said tax in the amount of $22,130.94.

It does not appear that, at the time of the appraisement or at the time of the payment of the tax, any question, either as to the valuation or liability of the appraised estate for the tax, was raised. The executors made payment of the tax promptly in order to secure the benefit of the discount allowed by section 38 of said act.

A petition for a refund of a portion of the tax paid was presented to the Register of Wills of Westmoreland County, addressed to the said Register of

Wills, the State Treasurer and the Auditor General of the Commonwealth of Pennsylvania. The petition was forwarded to the Auditor General by the said Register of Wills by letter dated July 13, 1921. The Auditor General, in turn, referred it to the State Treasurer. This petition is styled a petition or application of the executors of the estate of said decedent. It is not signed by such executors, but by attorneys for the estate. The petition is alleged to be made in accordance with the provisions of section 40 of the said Act of June 20, 1919, P. L. 521.

In this petition it is alleged that there was included within the appraisement of the estate of said decedent certain real estate which, at the time of his death, was situate outside of the State of Pennsylvania; that the total value of this real estate, as valued in the appraisement, was $477,062.40; that tax thereon, less discount for prompt payment, had been paid in the sum of $9064.19. The petition prays for a refund of the said sum of $9064.19 upon the ground that, such real estate being situate outside of the State of Pennsylvania, its value could not be included in determining the clear value of the estate of said resident decedent to form the basis upon which the tax imposed by the said Act of 1919 could be calculated; and, further, that, under the provisions of the will of the said decedent, no conversion took place whereby the said real estate so situated outside of the State of Pennsylvania was converted into personal property, and, therefore, brought within the jurisdiction of the Commonwealth of Pennsylvania for taxable purposes under the said Act of 1919.

It appears from a letter addressed to the cashier of the Treasury Department of the State, dated Aug. 12, 1921, and from the deductions allowed from the gross value of the estate in order to determine its clear value, and which deductions were exhibited in the appraisement filed, that the executors had the services of counsel, who was also, as appears by the receipt given by the Register of Wills for the payment of the tax, one of the executors.

*Discussion.*

It is clear from the foregoing facts that the errors alleged in the petition raise questions of law. The contention of the petitioners is that, under the provisions of the Act of June 20, 1919, P. L. 521, real estate situated outside the State of Pennsylvania cannot be included for the purpose of determining the clear value of the estate which constitutes the basis upon which the tax is imposed under the provisions of the said act of assembly, and that no conversion resulted from the language of the will of the said testator which brought such property within the jurisdiction of the Commonwealth of Pennsylvania, wherein and whereby such tax could be imposed with reference thereto.

Sections 10 and 13 of article II of the said Act of 1919 read as follows:

"Section 10. The register of wills of the county in which letters testamentary or of administration are granted upon the estate of any person dying seized or possessed of property while a resident of the Commonwealth shall appoint an appraiser, whenever occasion may require, to appraise the value of the property or estate of which such decedent died seized or possessed and hereinbefore subjected to tax. Such appraiser shall make a fair, conscionable appraisement of such estates, and assess and fix the cash value of all annuities and life estates growing out of said estates, upon which annuities and life estates the tax imposed by this act shall be immediately payable out of the estate at the rate of such valuation."

Steel's Estate.

"Section 13. Any person not satisfied with any appraisement of the property of a resident decedent may appeal, within thirty days, to the Orphans' Court, on paying or giving security to pay all costs, together with whatever tax shall be fixed by the court. Upon such appeal, the court may determine all questions of valuation and of the liability of the appraised estate for such tax, subject to the right of appeal to the Supreme or Superior Court."

I do not think there can be any doubt that the questions of law raised in the petition in this case could have been raised upon appeal to the Orphans' Court of Westmoreland County, subject to the right of appeal to the Supreme or Superior Court, in accordance with the provisions of said section 13 of the act. The Orphans' Court is given express authority to "determine all questions of valuation and of the liability of the appraised estate for such tax, subject to the right of appeal to the Supreme or Superior Court." Every question which is raised in this petition could have been raised by way of such appeal, if it had been taken within the said period of thirty days. Instead of an appeal being taken, the tax was paid by the personal representatives of the decedent.

Section 40 reads as follows:

"Section 40. In all cases where any amount of such tax is paid erroneously, the State Treasurer, on satisfactory proof rendered to him by the register of wills or Auditor General of such erroneous payment, may refund and pay over to the person paying such tax the amount erroneously paid. All such applications for the repayment of such tax erroneously paid in the treasury shall be made within two years from the date of payment, except when the estate upon which such tax has been erroneously paid shall have consisted, in whole or in part, of a partnership or other interest of uncertain value, or shall have been involved in litigation, by reason whereof there shall have been an overvaluation of that portion of the estate on which the tax has been assessed and paid, which overvaluation could not have been ascertained within said period of two years; in such case the application for repayment shall be made to the State Treasurer within one year from the termination of such litigation or ascertainment of such overvaluation."

It will be observed, under this section, that the application for repayment is to be made to the State Treasurer for the repayment of tax erroneously paid in the State Treasury "within two years from the date of payment," except in certain cases. The State Treasurer is given authority to "refund and pay over to the person paying such tax the amount erroneously paid," "on satisfactory proof rendered to him by the register of wills or Auditor General of such erroneous payment." Under the language of this section, the State Treasurer is without authority to make a refund except when the required proof is rendered to him by the register of wills or the Auditor General.

Attorney-General Kirkpatrick, in an opinion rendered to the Auditor General May 2, 1887, as to the meaning of the word "erroneously," as contained in the Act of June 12, 1878, P. L. 206, held that the word, as used in such statute, "must be given its ordinary legal meaning, and applied to error in fact arising from ignorance or mistake." He expressly held that where the error is one of law, it is not within the provisions of the said Act of 1878. This act authorized the State Treasurer to refund collateral inheritance tax which had been paid "erroneously to the register of wills of the proper county for the use of the Commonwealth, . . . on satisfactory proof rendered to him by said register of wills of such erroneous payment."

Steel's Estate.

March 11, 1892, Attorney-General Hensel, in an opinion rendered to the State Treasurer, approved the construction of the said Act of June 12, 1878, P. L. 206, given by Attorney-General Kirkpatrick. He held that the legislature having provided in section 12 of the Act of May 6, 1887, P. L. 79, for an appeal from the appraisement, it could not be assumed "that it was ever contemplated the State Treasurer should be constituted an appellate jurisdiction on this subject, or that he should be empowered to revise an error of judgment on the part of the appraiser, nor that interested parties should be permitted to take the chances of property being appraised too low, and secure a rebate from the Commonwealth if it happens to be appraised higher than its market price." In this latter case the basis of the alleged erroneous payment was the payment of the tax upon an alleged overvaluation of real estate made in the appraisement. The Attorney-General held that, having failed to take an appeal from the appraisement, the appraisement was conclusive upon the parties. In conclusion, he said: "No error, therefore, appears, . . . unless there was an error of judgment on the part of the appraiser selected by the register, and the parties having taken no appeal from that appraisement, it is to be assumed they were satisfied with it at the time. . . ."

The error of judgment on the part of the appraiser in that case, if there was error, was an erroneous valuation of the estate. Such error was one of fact. It will be seen that the Attorney-General made no distinction between error of fact and law

In the case of Hutchinson v. The Com., 6 Barr, 124, the Supreme Court said with reference to the appeal allowed under the provisions of the Act of March 30, 1811, 5 Sm. Laws, 228, from settlements of accounts made by the Auditor General and State Treasurer, that a failure to take an appeal was conclusive. The court said, on page 128: ". . . The object of the appeal thus given is to enable the appellant to open the account settled by the accounting officers, and subject it to the scrutiny of a tribunal armed with all the powers necessary to a critical investigation. But what if no appeal be taken? In such case the implication that the lawmakers intended the settlement to be conclusive is necessary and irresistible. If this were not so, and the complaining party were at liberty to impeach the action of the auditor and treasurer in an action subsequently brought, the appeal provided by the statute would be altogether unnecessary, and the attempt to settle an account, in a large majority of litigated cases, end where it began. It is, however, insisted that the conclusive effect of such a settlement is to be confined to errors dehors the evidence of settlement, and does not embrace and protect such as appear on its face. But we see no warrant for this distinction in the language or spirit of the act of assembly. By declining to appeal, the party concedes the correctness of the settlement in every particular, and he cannot afterwards be permitted to aver that his acquiescence was induced by misapprehension of the law. Admitting this to be true, it is beyond the power of the ordinary tribunals to afford redress. If injustice has been done, the only remedy is to be found in the exercise of the extraordinary power of the legislature." See, also, Com. v. Pennsylvania Co., 145 Pa. 266.

It is not within reason to conclude, under the facts presented in the instant case, that the executors did not know what they were doing. It is to be assumed that they examined the appraisement, knew its contents, verified the calculation of the tax they paid, the valuation of the estate upon which it was based and the deductions allowed from the gross value. The conclusion, therefore, is irresistible that all parties in interest were convinced of the correctness of the valuation and the liability of the appraised estate for the tax.

Steel's Estate.

With the knowledge that the real estate in question was included in the appraisement the tax was paid. Nothing was done by way of ignorance or mistake. They did what they intended to do.

In the case of Com. v. Pennsylvania Co., 145 Pa. 266, 280, the Supreme Court had before it the question of the power of the Auditor General and State Treasurer to make settlements and resettlements of accounts between the State and its debtors and the power of the Board of Revision created by the Act of April 8, 1869, P. L. 19. The court, in this connection, considered the provisions of the Act of March 30, 1811, 5 Sm. Laws, 228, section 8 of the Act of April 21, 1846, P. L. 415, and the Act of April 8, 1869, P. L. 19.

In answer to a contention that the taxes there in question had been omitted by mistake, the Supreme Court said, on page 280 of the opinion: ". . . When one fails by some forgetfulness, or inadvertence, to do what he intended to do, or knew should be done, such failure may be said to happen by mistake. But if one does just what he intended to do, in the way he intended, after careful deliberation and competent legal advice, his action is in no sense due to mistake. His conclusion may be wrong, but it has been considerately reached. His action may do some one an injustice, but, if so, it is not the result of accident, but of a conviction that the action is the proper one to take. Before such action can be reversed or set aside, it is necessary to revise the conclusions on which it rested. An error in computation, or in transcribing, may be corrected, and such correction merely gives effect to the purpose of him by whom the error was made. He failed to do what he intended, when he made the error, and its correction is in aid of his own execution of his intent. . . ."

I do not think the fact that by the following provision of section 40— ". . . All such applications for the repayment of such tax erroneously paid in the treasury shall be made within two years from the date of payment, except when the estate upon which such tax has been erroneously paid shall have consisted, in whole or in part, of a partnership or other interest of uncertain value, or shall have been involved in litigation, by reason whereof there shall have been an overvaluation of that portion of the estate on which the tax has been assessed and paid, which overvaluation could not have been ascertained within said period of two years; in such case the application for repayment shall be made to the State Treasurer within one year from the termination of such litigation or ascertainment of such overvaluation"—the legislature intended that all questions of valuation of appraised estates fell within the scope of such section. So to hold would be in effect to nullify the provisions of section 13 covering the jurisdiction of the courts upon appeal as to valuations. So to hold would result in the very evil which the Supreme Court condemned in Hutchinson v. Com., 6 Barr, 124, relative to the appeal provided in the Act of March 30, 1811, 5 Sm. Laws, 228.

Especially apt is the language of the Supreme Court in this case, as is made clear by the interpolation of language (indicated by parenthesis) appropriate to the facts in the instant case.

". . . But what if no appeal be taken? In such case the implication that the lawmakers intended the settlement (the appraisement) to be conclusive is necessary and irresistible. If this were not so, and the complaining party were at liberty to impeach the action of the auditor and treasurer (the appraiser), in an action subsequently brought (in an application for refund under section 40 of the Act of June 20, 1919, P. L. 521), the appeal provided by the statute would be altogether unnecessary, and the attempt to settle an account (to determine the valuation and liability of the appraised estate for

the tax), in a large majority of litigated cases (in a large majority of estates), end where it began: . . ." Hutchinson *v.* Com., 6 Barr, 124, 128.

Sections 13 and 40 must be considered together in order to arrive at their proper interpretation and construction.

What has been said applies with equal force with reference to the provisions of section 27 of the act providing for an appeal from an appraisement made by an appraiser appointed by the Auditor General.

I am, therefore, of the opinion that all questions of fact and law as to the valuation and liability of an appraised estate for the tax are conclusively determined upon a failure to take an appeal as provided in the act, and that the State Treasurer is without authority, under the provisions of section 40 of the act, to make a repayment of tax when the application for repayment is based upon alleged error in such valuation or liability, except in the cases of overvaluation in the classes of estates specified expressly in said section 40.

You are, therefore, advised that no repayment or refund should be made in this case.                              From C. P. Addams, Harrisburg, Pa.