## Tax on Trust Companies' Shares.

*Taxation—Penalties—Exemption—Resettlement—Acts of March 30, 1811, and July 11, 1923.*

1. In case of a resettlement by the Auditor General of any tax on shares of trust companies as imposed by the Act of July 11, 1923, P. L. 1071, the trust companies have the privilege of paying such tax within the period of sixty days after the date of such resettlement, without incurring liability for the penalty provided by the act.

2. Such trust companies are also entitled to the exemption from the four mills Pennsylvania loans tax on bonds, mortgages and judgments owned by them, where the tax on shares has been paid to the State Treasurer by the companies within sixty days after the date of such resettlement.

3. A "resettlement" is a "settlement" within the meaning of the Acts of March 30, 1811, 5 Sm. Laws, 228, and July 11, 1923, P. L. 1071.

Department of Justice. Opinion to Hon. J. Lord Rigby, Revenue Deputy, Auditor General's Department.

MOYER, Dep. Att'y-Gen., Jan. 14, 1927.—You have advised this department that the Act of Assembly of July 11, 1923, P. L. 1071, provides that trust companies shall pay their tax on shares within sixty days from the date of the settlement of the same by the Auditor General, in order to avoid the 10 per cent. penalty provided by said act of assembly and to gain the exemption from the 4 mills Pennsylvania Loans Tax on bonds, mortgages and judgments owned by them. Briefly, you inquire whether, in the case of a resettlement by the fiscal officers of any tax on shares against said trust companies, if the trust companies pay said tax within sixty days from the date of resettlement, are they liable for the 10 per cent. penalty as provided by said act, and, also, are they entitled to the exemption from the 4 mills Pennsylvania Loans Tax aforesaid.

Section 1 of the Act of June 13, 1907, P. L. 640, as amended by the Act of July 11, 1923, P. L. 1071, which is the particular statute here in question, after making provision for the assessment by the Auditor General of the tax on the shares of the capital stock of trust companies, provides, *inter alia*, as follows:

"After the Auditor General shall have fixed the value of the shares of stock in any such company by the method hereinbefore provided, and settled an account according to law, he shall thereupon transmit to the president [cashier], secretary or treasurer of such company a copy of such settlement, showing the valuation and assessment so made by him and the amount of tax due the Commonwealth on all such shares. . . . It shall be the duty of every such company, within a period of sixty days *after the date of such settlement by the Auditor General*, at its option, to pay the amount of said tax to the State Treasurer from its general fund, or collect the same from its shareholders and pay over to the State Treasurer: Provided, that if any such company shall fail or refuse to make such report, or to pay such tax, at the time hereinbefore specified, . . . he [Auditor General] shall, after having ascertained the actual value of each share of the capital stock of such company from the best information he can obtain, add thereto ten per centum as a penalty, assess the tax as aforesaid, and proceed according to law to collect the same

## Tax on Trust Companies' Shares.

from such company: . . . And provided, further, that in case any such company shall collect annually from the shareholders thereof, or from the general fund of said company, said tax of five mills on the dollar upon the value of all the shares of stock of said company—the value of each share of stock to be ascertained and fixed as hereinbefore provided—and pay said tax into the State Treasury, as hereinbefore provided, the shares, and so much of the capital stock, surplus, profits and deposits of such company as shall not be invested in real estate, shall be exempt from all other taxation under the laws of this Commonwealth."

Let us consider, first, the latter part of your inquiry, that is, whether, in the case of a resettlement by the fiscal officers of any tax on shares against a trust company, if the trust company pays said tax on shares within a period of sixty days after the date of said resettlement by the Auditor General, it is entitled to the exemption from the 4 mills Pennsylvania loans tax on bonds, mortgages and judgments owned by them, as provided by said Act of July 11, 1923. Nothing is said in said Act of July 11, 1923, nor in said Act of June 13, 1907, P. L. 640, of which act it is an amendment, concerning the "resettlement" of tax on shares of trust companies. We turn to the Act of March 30, 1811, § 16, 5 Sm. Laws, 228, for the authority given to the fiscal officers to revise and resettle a State tax, which provides as follows: "The Auditor General and State Treasurer, at the request of each other or of the party, shall revise any settlement made by them, except such as have been appealed from or which by any other proceedings have been taken out of their offices, if such request be made within twelve months of the date of settlement; but after that time no settlement on which a final discharge has been granted shall be opened, but the same shall be quieted and finally closed."

As stated by Judge Archbald in the case of In re Wyoming Valley Ice Co., 165 Fed. Repr. 789, 791: "The construction of this statute is plain. Under it, either of their own motion or at the instance of a party interested, taxes which have been settled, but not, by appeal or otherwise, taken out of their hands, may be re-examined and revised by the accounting officers referred to, provided that action be taken within the time specified and a final discharge has not been allowed."

A resettlement as authorized by said section 16 of the Act of 1811, where it is referred to as a "revision" of the settlement made by the fiscal officers, has been construed to be a "settlement" by the court in said case of In re Wyoming Valley Ice Co., *supra*, where it is said by the court, on page 792, in discussing the question of how far a tax on capital stock, which has been settled and paid, can be resettled and enlarged, as follows: "Not only must the tax have been discharged, but the time limited by the statute must also have elapsed. Conceding—contrary to what seems to have been decided in Com. *v.* Pennsylvania Co., 145 Pa. 266, 23 Atl. Repr. 549—that this begins to run, not from the time of payment, but from the time when the *settlement which is revised was made*, the settlement here upon which the taxes were paid was Feb. 16, 1906, and the resettlement on which the present claim is based was April 26th following, the two being only a little over two months apart."

Likewise, Deputy Attorney-General Kun, in an opinion to the Auditor General, reported in 43 Pa. C. C. Reps. 489, decided that a resettlement by the fiscal officers, made under the provisions of said Act of 1811, was a "settlement." Deputy Attorney-General Kun, in construing part of section 9 of said Act of March 30, 1811, 5 Sm. Laws, 228, which provides,

"If any person or persons, body politic or corporate, be dissatisfied with the *settlement* of his, her or their accounts by the Auditor General and State

Treasurer, he, she or they may appeal therefrom to the Court of Common Pleas of the county in which the seat of government may then be, and such appeal shall be transmitted by the Auditor General to the clerk of the said court, to be by him entered of record, subject to like proceedings under the direction of the State Treasurer as in common suits; provided, however, that the appeal be filed in the office of the Auditor General within sixty days after notice of such *settlement*, . . ."

said in his opinion, on page 490:

"It is, of course, within the province of the taxing officers to open and restate any account unappealed from, and by such resettlement made within a year establish a new date from which the sixty days within which appeals must be made would begin to run: Act of March 30, 1811, 5 Sm. Laws, 228; In re Wyoming Valley Ice Co., 165 Fed. Repr. 789."

If a resettlement is a "settlement" within the meaning of said Act of March 30, 1811, it is very difficult to see how the word "settlement," as used in said Act of July 11, 1923, can have a different meaning. If it did have a different meaning, a great deal of confusion would follow. In view of the fact that it has uniformly been held, and the practice uniformly recognized for many years, that resettlements or revised settlements, as provided for in said Act of March 30, 1811, are comprehended within the term "settlement," and the further fact that said Acts of March 30, 1811, and July 11, 1923, must be construed together in arriving at the proper procedure relative to settlements and resettlements of the taxes on shares of trust companies, the conclusion is irresistible that the expression "within a period of sixty days after the date of such settlement by the Auditor General" applies to and comprehends a resettlement of said tax by the Auditor General.

In view of the conclusion which we have just reached in this matter concerning the construction of said Act of July 11, 1923, with respect to resettlements of tax on shares of trust companies, it would follow that the penalty of 10 per cent. therein provided to be added by the Auditor General in assessing said tax on shares, in the event, *inter alia*, that the trust company fails to pay such tax at the time specified, should not be added for the failure of the trust company to pay said tax until the expiration of a period of sixty days after the date of resettlement of said tax by the Auditor General. In this connection, we believe that the principle of law laid down by Justice Mitchell in the case of Com. *v.* Philadelphia, etc., C. & I. Co., 145 Pa. 283, where consideration was made of the question of the 10 per cent. penalty provided in section 4 of the Act of June 30, 1885, P. L. 194, for failure of the treasurer of a corporation to assess and pay the tax therein provided for and make report thereof to the Auditor General, is in itself conclusive of the question which here arises as to the penalty to be imposed by said Act of 1923 where resettlements are made of said tax on shares by the Auditor General. This statement by Justice Mitchell in said opinion, on page 287, is as follows: "This penalty, it is plain, is meant to enforce the performance of the duties which the statute casts upon the corporation treasurer in reference to the tax. It has no relevancy to questions that may arise between the corporation and the State officers in the settlement of the amount and items of its account, or to any delay that may be incident to the proceedings according to law, by appeal or otherwise."

I am, therefore, of the opinion, and so advise you, that in the case of a resettlement by the Auditor General of any tax on shares of trust companies as imposed by said Act of July 11, 1923, P. L. 1071, the trust companies have the privilege under said act of paying said tax within a period of sixty days

after the date of such resettlement by the Auditor General, without incurring liability for the 10 per cent. penalty as provided by said act of assembly for failure to pay said tax; and that said trust companies are also entitled to the exemption from the 4 mills Pennsylvania loan tax on bonds, mortgages and judgments owned by them, where said tax on shares has been paid to the State Treasurer by said trust companies within a period of sixty days after the date of such resettlement by the Auditor General.

From C. P. Addams, Harrisburg, Pa.